MICHIGAN BANKERS' ASS'N *v.* OCEAN ACCIDENT & GUARANTEE CORP., LTD.

1. SUNDAY—CONTRACTS.

A valid contract may be entered into on a secular day even though such contract is in accordance with Sunday talk had between the parties (2 Comp. Laws 1929, § 9078).

2. SAME—CONTRACTS—RATIFICATION.

A contract made on a Sunday may not be ratified since it is void (2 Comp. Laws 1929, § 9078).

3. SAME—CONTRACTS.

Verbal understanding on Sunday as to what was to be done in satisfaction of claimed liability where followed by a meeting of minds, offer and acceptance in writing, settlement entered into, executed, carried out and performed on a secular day resulted in a valid contract (2 Comp. Laws 1929, § 9078).

4. PRINCIPAL AND SURETY—SUNDAY CONTRACTS.

In action by obligee on bond of its treasurer against surety for alleged liability for loss resulting from his refusal to withdraw plaintiff's funds from bank of which he was an officer and which was alleged to have been in a precarious financial condi-

tion, evidence that securities of face value of somewhat larger amount were received on secular day in full, final and complete settlement of such treasurer's liability as represented by certificates of deposit *held*, sufficient to prove a valid contract notwithstanding original understanding in relation to settlement was made on Sunday (2 Comp. Laws 1929, § 9078).

5. EVIDENCE—BEST EVIDENCE.

The administration of justice is a practical matter and, since the trials of cases are for the purpose of ascertaining and declaring the truth and there must be an end of litigation, the best evidence that the nature of the case will admit should be produced, the term being confined to cases where the law has divided testimony into primary and secondary, hence where an instrument exists it should be proved by an original rather than by other testimony which is open to danger of inaccuracy.

6. SAME—BANKS AND BANKING—REPORTS—SOLVENCY—HEARSAY.

On question of solvency of bank in which plaintiff's treasurer had deposited plaintiff's funds, in action against surety on treasurer's bond for his wilful failure to withdraw the funds from bank alleged to have been in precarious condition, bank examiner's criticisms of action of plaintiff's treasurer as cashier of the bank *held*, properly excluded as hearsay.

7. SAME—SCHEDULES—DISCRETION OF COURT.

· It is within the discretion of the trial court to admit schedules, verified by sworn testimony of person by whom they were made, from multifarious and voluminous books and documents of such a character as to render it difficult for court or jury to comprehend material facts without schedules.

8. TRIAL—SCHEDULES—CROSS-EXAMINATION.

When schedules of voluminous documents are admitted in evidence it is necessary that the opposite party have adequate opportunity to examine such schedules and compare them with the original to prepare for cross-examination.

9. EVIDENCE—INADMISSIBLE HEARSAY ATTACHED TO ADMISSIBLE REPORTS.

Bank examiner's criticisms of plaintiff's treasurer, cashier of bank in which plaintiff's funds had been deposited, which criticisms were inadmissible as hearsay in action against surety on his bond for treasurer's wilful misapplication of funds *held*, not admissible because attached to examiner's reports of audit and examination which might otherwise have been admissible.

10. SAME—PRINCIPAL AND SURETY—BANKS AND BANKING—REPORTS.
In action against surety of plaintiff's treasurer for wilful mis-
application of funds by deposit in bank of which he was
cashier and which was alleged to be in a precarious financial
condition, report and criticisms of bank examiner *held*, prop-
erly excluded where it was not shown figures in report were
based upon bank's books in court and best evidence of their
contents nor that defendant had knowledge of the contents of
the report and criticisms were inadmissible as hearsay.

Appeal from Wayne; Marschner (Adolph F.), J.
Submitted October 25, 1935. (Docket No. 94, Calen-
dar No. 38,595.) Decided January 31, 1936.

Assumpsit by the Michigan Bankers' Association,
a voluntary unincorporated association, against the
Ocean Accident & Guarantee Corporation, Limited,
a foreign corporation, on a surety bond for sums
lost due to alleged misappropriation and misapplica-
tion of funds. Judgment for defendant. Plaintiff
appeals. Affirmed.

*Bulkley, Ledyard, Dickinson & Wright,* for plain-
tiff.

*Kerr, Lacey & Scroggie* (*Miller, Baldwin & Boos,*
of counsel), for defendant.

POTTER, J. Plaintiff sued defendant, the surety on
the bond of plaintiff's treasurer, Paul R. Baldwin,
to recover $34,471.17, alleging Baldwin was its treas-
urer from July 1, 1931, to April 20, 1932, charged
with custody and control of plaintiff's funds. Plain-
tiff claimed in its declaration its treasurer, Baldwin,
gave the bond sued upon, upon which defendant was
surety, to pay plaintiff such pecuniary loss as plain-
tiff should sustain by reason of "any act or acts of
fraud, dishonesty, forgery, theft, larceny, embezzle-

ment, misappropriation, wrongful abstraction, wilful misapplication or any other criminal act."

The breach of the conditions of the bond relied upon by plaintiff here is that Baldwin, as treasurer, had plaintiff's funds and deposited them in the Manistique Bank, of Manistique, Michigan, of which he was cashier; that Baldwin was instructed on or about December 15, 1931, by the other executive officers of plaintiff to remove all plaintiff's funds except $5,000 from the Manistique Bank and deposit the same in the banks of the Guardian Detroit Union Group, Inc., of Detroit; that Baldwin refused to obey such instructions, although he well knew the Manistique Bank was in a precarious condition; that Paul R. Baldwin wilfully misappropriated and wilfully misapplied the funds of plaintiff by ignoring plaintiff's instructions, directions and orders, and permitting the funds of plaintiff to remain on deposit in the Manistique Bank; that from December 15, 1931, to April 20, 1932, Baldwin fraudulently and dishonestly made further deposits in the Manistique Bank in which he had a personal interest as an officer and otherwise, though he knew the bank was in a precarious condition when such deposits were made, in violation of plaintiff's instructions, directions and orders; that while the bond was in full force and effect the Manistique Bank closed its doors at a time when plaintiff's association had on deposit therein $34,471.17; that plaintiff had performed all conditions precedent to recovery on the bond, and that, although it had demanded payment thereon, defendant refused to pay.

Plaintiff also declared upon all the common counts in assumpsit; attached a bill of particulars to its declaration showing $34,471.17 due, and a copy of the bond sued upon.

Defendant filed an answer to plaintiff's declaration, which, though occupying several pages, amounted to what was, under the former practice, a plea of the general issue; and under the heading of "answer to bill of particulars," it denies the funds in question were wrongfully on deposit in the Manistique Bank; alleges an accord and satisfaction on or about April 11, 1933, under which plaintiff about that date received and retained four certificates of participation issued by the Union Guardian Trust Company in the amount of $1,000 each, and certificates of deposit in the Metropolitan Trust Company in the amount of $40,000, together with an assignment of a claim in the name of J. J. Herbert against the Metropolitan Trust Company in the amount of $40,800, and savings passbook of the Detroit Savings Bank in the principal amount of $6,500, and checks from various banks in the sum of $150, and that by reason of such accord and satisfaction entered into and executed, plaintiff has no claim against it.

It alleges plaintiff made a settlement agreement about April 11, 1933, with the Manistique Bank and fully released the bank and Baldwin from all liability growing out of the deposit of plaintiff's funds in the Manistique Bank. It alleges that in pursuance of such settlement agreement plaintiff received the property specifically mentioned above as having been received in pursuance of an agreement for accord and satisfaction, and claims plaintiff confirmed and ratified such settlement, and is estopped from maintaining this suit. It alleges the bond sued upon was subject to the following special agreement:

"The only losses caused by any employee covered hereunder shall be those discovered either during

the period for which the company shall be bound hereunder as to such employee or within 24 months next after the termination of such period, and as to which notice of loss in writing shall be delivered to the company at its office, New York city, within 10 days after such discovery.''

And that plaintiff failed to comply with and breached such special agreement by failing to give defendant notice of loss in writing within the time and in the manner provided therein. It alleged plaintiff failed within 90 days after discovery of loss to file an itemized claim, sworn to, as required by the following special agreement:

''The employer shall within 90 days after discovery of such loss file with the company an itemized claim hereunder duly sworn to, and the company shall have two months after presentation of such claim in which to verify the same and to make payment, during which period no legal proceeding shall be brought against the company as to that claim, nor at all as to that claim after the expiration of 12 months next after the employer shall have filed such claim with the company.''

It alleged there was no liability upon the bond sued upon because plaintiff did not fulfill, but breached, the following condition of the bond sued upon:

''There shall be no liability under this bond for any act or acts of fraud, dishonesty, forgery, theft, larceny, embezzlement, misappropriation, wrongful abstraction, wilful misapplication or any other criminal act, committed by any employee after the employer shall have become aware of any act of such employee which could be made the basis of a claim hereunder.''

It alleged that on or about April 11, 1933, plaintiff entered into a full settlement agreement with the Manistique Bank and Baldwin, and fully released, acquitted and discharged the bank and Baldwin from all claims, demands, credits and liabilities of any nature which plaintiff had against the Manistique Bank and Baldwin, growing out of the deposit of plaintiff's funds by Baldwin in the Manistique Bank; and thereby had interfered with, delayed, hindered and extinguished defendant's rights of subrogation under the bond sued upon, and that by reason thereof plaintiff could not maintain its suit.

Plaintiff filed an answer to defendant's pleading, and we finally reach the point that plaintiff claims defendant is liable in the sum of $34,471.17 to plaintiff on the bond, and defendant claims it is not liable thereon.

Plaintiff subsequently moved to amend its reply to show that if any agreement or settlement was entered into with the Manistique Bank or Baldwin, it was made April 10, 1932, and not April 11, 1932, and that April 10, 1932, was on Sunday. This amendment was allowed by the trial court.

After plaintiff's executive officers demanded the money in the hands of its treasurer, except $5,000, be deposited in the banks in Detroit and Mr. Baldwin neglected to comply with such demand, he came to Detroit to effect a settlement. At that time the Manistique Bank was in a failing condition and about to close. A conference was had between Mr. Baldwin and the general counsel of the Michigan Bankers' Association. This conference was held on Sunday. On April 11, 1932, Mr. Baldwin wrote to the executive manager of the Michigan Bankers' Association:

"Agreeable to our understanding worked out with you and Mr. Hal H. Smith, am sending herewith by registered mail, $40,000 certificates of deposit of the Metropolitan Trust Company, Detroit, Michigan, dated January 16, 1931, payable to the Manistique Bank, duly assigned by the Manistique Bank to J. Joseph Herbert, and assigned by J. Joseph Herbert in blank—C/D's Nos. 1118 to 1125, both inclusive, for $5,000 each. Also assignment of claim, in blank, of J. Joseph Herbert of $40,800 against the Metropolitan Trust Company.

"Also, herewith savings pass No. 194668 of The Detroit Savings Bank issued to the treasurer of the Michigan Bankers Association July 9, 1931, in the principal amount of $6,500.

"Also, herewith, checks from sundry banks in the payment of dues ($150), which you will, no doubt, deposit in the active account you are going to open in Detroit.

"Also, herewith, our C/D's in the principal amount of $34,249.98 (the amount in the account being larger than I realized), with the understanding the C/D's will be cancelled and returned to us. We will pay the checks sent you last week, which kindly deposit as soon as possible.

"Sincerely yours,
"PAUL R. BALDWIN.

"P. S. I called Walter Truettner by phone yesterday and asked him to turn over to you the $4,000 Guardian bonds."

This letter was received by the executive secretary of plaintiff, for April 14, 1932, it wired the Manistique Bank:

"Answering yours April eleventh we accept claim against Metropolitan Trust and four thousand dollars certificate of participation in settlement of certificates one hundred one hundred one one hundred

two one hundred five and one hundred eight stop details of transaction covered in letter today.''

And on the same day, Mr. Burns, the executive manager of plaintiff, wrote to the Manistique Bank:

''We acknowledge receipt of assignment of a claim in the name of J. J. Herbert against the Metropolitan Trust Company, Detroit, in the amount of $40,800; together with certificates of deposit of the Metropolitan Trust Company in the total amount of $40,000; also participation certificates of Guardian Trust Company Nos. 139, 140, 141 and 142 in the amount of $1,000 each with coupons of $27.50 each, Nos. 9 and 10 attached to each of said certificates.

''We accept the above described claim and securities in full settlement of the account of the treasurer of the Michigan Bankers Association against the Manistique Bank, represented by four certificates of $5,000 each and one certificate of $14,249.98. These certificates representing the above liability of the Manistique Bank are inclosed herewith. This letter is in confirmation of a telegram of even date. Should there be any amount due the Michigan Bankers Association other than the above liabilities, the Michigan Bankers Association will make claim therefor against the Manistique Bank.''

It is claimed this settlement was made on Sunday, at the home of Mr. Hal H. Smith, general counsel of the Michigan Bankers' Association, plaintiff.

Individuals may talk business on Sunday. No prohibition arises against their entering into a valid contract on a secular day even though such contract, in this case in writing, is in accordance with the Sunday talk had between the parties. Here, there was an offer by Baldwin of certain securities in settlement of his claimed liability to plaintiff, and their

acceptance by plaintiff, on a secular day. There may have been a verbal understanding on Sunday as to what was to be done, but there was a meeting of the minds, an offer and acceptance in writing, a settlement entered into, executed, carried out and performed, on a secular day. Though a contract made on Sunday may not, because void, be ratified, there is no prohibition against talking on Sunday, providing there is a contract subsequently entered into, in writing, which is complete in itself and which is executed and performed on a secular day.

Mr. Smith recognized that plaintiff faced an imminent financial loss. He thought the settlement an advantageous one, and recommended plaintiff recover all it could. He understood at the time of the settlement the account of plaintiff was finally represented in the certificates of deposit; the certificates of deposit were to be sent down by Mr. Baldwin when the bank sent the securities, and plaintiff would send back the certificates of deposit as paid and cancelled, at least the certificates of deposit were to be no longer the binding obligations of the Manistique Bank; and that by so doing, plaintiff was collecting its certificates of deposit from the Manistique Bank by accepting these securities for such certificates of deposit. It seems to be entirely immaterial whether this understanding was originally arrived at on Sunday or not.

On April 11, 1932, Mr. Baldwin tendered these securities to plaintiff with the understanding the $34,249.98 of certificates of deposit were to be cancelled and returned to him or to the Manistique Bank, and April 14, 1932, plaintiff acknowledged the receipt of these securities and certificates of deposit and that they were accepted by plaintiff and

the certificates of deposit paid and cancelled by the acceptance of such securities and returned to the Manistique Bank. By this transaction, plaintiff received $44,150, face value, in securities in settlement of its claim of $34,249.98 which Baldwin had, in his hands as treasurer of plaintiff, deposited in the Manistique Bank. And, in addition to this, Baldwin at that time turned over passbook No. 194668 in the Detroit Savings Bank, issued to the treasurer of the Michigan Bankers' Association, in the principal sum of $6,500, and also delivered sundry checks aggregating $150.

A fair inference from the testimony is that these securities were received in full, final and complete settlement of the liability of Mr. Baldwin, as treasurer of plaintiff, and, though the original understanding in relation to this settlement was made on Sunday, the offer of the securities in settlement of Baldwin's liability and their acceptance by the plaintiff were sufficient to constitute a contract, and neither of these transactions was affected by 2 Comp. Laws 1929, § 9078.

The reports of the examiners, employed by the commissioner of banking, of the result of their examination of the Manistique Bank were offered in evidence by plaintiff against defendant and excluded by the trial court. This ruling is said to be erroneous and prejudicial. It was not shown the figures in these reports were based upon the bank's books which were in court and the best evidence of their own contents; and it was not shown defendant had knowledge of the contents of these reports. Accompanying the reports and offered in connection therewith was a letter from the banking department to the bank criticizing it and Mr. Baldwin. This letter was written after the bank closed. It, too,

was excluded.  Was the trial court in error in his ruling?

Trials of cases are for the purpose of ascertaining and declaring the truth.  The administration of justice is a practical question.  There must be an end of litigation.  The best evidence rule, it is often said, excludes hearsay evidence, but in this State—

"The term 'best evidence' is confined to cases where the law has divided testimony into primary and secondary.  And there are no degrees of evidence except where some document or other instrument exists, the contents of which should be proved by an original rather than by other testimony, which is open to danger of inaccuracy."  *Elliott* v. *Van Buren*, 33 Mich. 49, 53 (20 Am. Rep. 668).

Though the so-called best evidence rule is spoken of as a rule of evidence, or, as said by Burke, in the trial of Warren Hastings, "The judges and sages of the law have laid it down that there is but one general rule of evidence—thé best that the nature of the case will admit," this so-called best evidence rule is generally more nearly a rule of procedure.

The question in controversy, where the report of the bank examiner was offered in evidence, was whether the bank was solvent or insolvent at a particular time.  The books of the bank were in court.  These reports of the bank examiner purported to contain a summary of the financial condition of the bank and, it is said, enumerated criticisms of the bank's policies and of the action of Mr. Paul R.. Baldwin, its cashier.  The report was offered against defendant.  So far as defendant is concerned, the criticisms of the bank examiner of the bank were hearsay.

It is said the reports of a bank examiner had been held admissible in evidence, particularly in *Re Cul-*

*hane's Estate,* 269 Mich. 68. That was a case where the report of the bank examiner was offered to show notice or knowledge to the bank and its officers of its financial condition, and it was admissible for that purpose. But such reports and criticisms of the bank were not admissible here against defendant surety company.

It is altogether likely that had the figures contained in the audit of the bank examiner been offered in evidence stripped of this inadmissible matter, as a summary based upon the books of the bank, they might have been admitted, it being a general rule that where books and documents introduced in evidence at the trial are multifarious and voluminous and of such a character as to render it difficult for the court or jury to comprehend the material facts without schedules containing abstracts thereof, it is within the discretion of the trial court to admit such schedules verified by the sworn testimony of the person by whom they were made. But, in all such cases, the procedural rule against unfair advantage as well as the right of cross-examination by the opposite party make it necessary the adverse party have an adequate opportunity to examine such schedules and compare them, if desired, with the original record to prepare for cross-examination. *Boston & Worcester Railroad Corp.* v. *Dana,* 1 Gray (67 Mass.), 83; 2 Wigmore on Evidence, § 1230 (5 Wigmore on Evidence [2d Ed.], § 1230); 1 Green-leaf on Evidence (9th Ed.), § 94; 1 Elliott on Evidence, § 210; 2 Jones Blue Book on Evidence, § 206.

As said in *Hoffman* v. *Pack, Woods & Co.,* 114 Mich. 1:

"It is no uncommon thing to call witnesses to prove the aggregate of certain items in books, or to

relieve the court from tedious examinations to ascertain whether items are entered therein."

Though the figures contained in the report of the bank examiner might, in the discretion of the trial judge, have been admissible, the inadmissible criticisms of the action of the bank or of Baldwin were not made admissible because a part of the report of such audit and examination.

Incompetent written statements are not made competent because attached to and forming a part of an audit of a bank examiner or forming a part of his report. *Atherton* v. *Defreeze,* 129 Mich. 364.

The admission of the figures of the bank examiner was, in the sound judgment and discretion of the trial court, as summaries based upon the examination and audit of the bank, but of themselves they were, as to the defendant, devoid of probative force, and hearsay, and excluded as such by the best evidence rule as applied by the trial court. The court did not err under the circumstances in rejecting the reports of the bank examiner as offered.

Many other questions are raised in the briefs but, as this disposes of the case, it is unnecessary to discuss them.

There was judgment in the trial court for defendant which is affirmed, with costs.

NORTH, C. J., and FEAD, WIEST, BUTZEL, BUSHNELL, EDWARD M. SHARPE, and TOY, JJ., concurred.