AMERICAN SURETY COMPANY OF NEW YORK *v.* TRENTON
STATE BANK OF TRENTON, MICHIGAN.

1. EVIDENCE—MULTIFARIOUS AND VOLUMINOUS BOOKS AND DOCU-
MENTS—SCHEDULES.
    Where books and documents introduced in evidence at a trial
    are multifarious and voluminous and of such a character as
    to render it difficult for the court or jury to comprehend the
    material facts without schedules containing abstracts thereof,
    it is within the discretion of the trial court to admit such
    schedules verified by the sworn testimony of the person by
    whom they were made, as long as opportunity be afforded,
    if desired, to examine such schedules and compare them with
    the original record for cross-examination.

2. SAME—TOWNSHIP TREASURER'S BOOKS—AUDIT—HEARSAY—BEST
EVIDENCE.
    In action by surety of township treasurer, as subrogee of town-
    ship, against bank which had cashed township checks present-
    ed by the treasurer where neither the township books nor the
    deposition of the auditor thereof were offered in evidence,
    admission of his audit and report, based on the books, was
    properly denied as such audit and report would be hearsay
    and not the best evidence.

3. SUBROGATION—SURETY ON TOWNSHIP TREASURER'S BOND—ACTION
AGAINST DEPOSITARY—BURDEN OF PROOF.
    In action by surety on bond of township treasurer, as subrogee
    of township, against bank as depositary of township funds
    for wrongful payment of township funds by reason of cashing
    township checks presented by the treasurer, the subrogee had
    burden of showing misappropriation by the treasurer by com-
    petent proof.

---

REFERENCES FOR POINTS IN HEADNOTES
[2] 20 Am. Jur., Evidence, § 409.
[2] Admissibility in evidence of audit or testimony of auditor or
    accountant. 52 A.L.R. 1266.
[4] 20 Am. Jur., Evidence, § 558.

4. EVIDENCE—ACTION TO COLLECT TOWNSHIP TREASURER'S SHORTAGE FROM DEPOSITARY—SELF-SERVING DECLARATION.

Where surety on township treasurer's bond settled with township board for shortages in his accounts and board passed a resolution assigning to plaintiff surety all rights which the township might have against either the treasurer or anyone else, recitals in such resolution as to shortage in accounts cannot be received as substantive evidence in action by subrogee against bank for wrongful payment to the treasurer of township funds, since such recitals would be self-serving and . incompetent.

5. OFFICERS—ACTION BY SURETY AGAINST DEPOSITARY—MISAPPROPRIATION—EVIDENCE.

Where defendant bank and another bank were designated as depositaries of township funds and treasurer was directed to maintain substantially equal balances in the two banks, and plaintiff who had been surety on the township treasurer's bond, merely showed defendant had given cash to treasurer for all of some checks and a part of others, it failed to show by such evidence that the treasurer had misappropriated township funds or that defendant was guilty of wrongful conduct.

Appeal from Wayne; Maher (Thomas F.), J. Submitted October 12, 1948. (Docket No. 43, Calendar No. 44,124.) Decided December 17, 1948. Rehearing denied February 28, 1949.

Action by American Surety Company of New York, a New York corporation, subrogee of Monguagon township, against Trenton State Bank of Trenton, Michigan, a Michigan banking corporation, for money converted by township treasurer. Judgment for defendant. Plaintiff appeals. Affirmed.

*Butzel, Levin, Winston, Youngjohn & Quint,* for plaintiff.

*Dickinson, Wright, Davis, McKean & Cudlip (Max L. Veech* and *Thomas C. Tilley,* of counsel), for defendant.

CARR, J. During the period from April, 1935, to August, 1943, Frank Matthews was treasurer of Monguagon township in Wayne county, and the plaintiff company was surety on his statutory bond.* Following an audit of the books of the treasurer in the summer of 1943, the township board claimed that a shortage existed. After some negotiations plaintiff paid to the township a sum somewhat in excess of $10,000. At the time of such payment the board adopted a resolution assigning to the plaintiff "all rights and remedies which said township of Monguagon, Michigan, has or may have in connection with or arising out of said shortage in the accounts of said Frank Matthews as treasurer of said township against not only said Frank Matthews, but also any other person, firm, or corporation."

By resolution adopted each year pursuant to Act No. 40, § 2, Pub. Acts 1932 (1st Ex. Sess.) (Comp. Laws Supp. 1940, § 2746-10, Stat. Ann. § 3.752), defendant and the Peoples State Bank were designated by the township board as depositories for the township funds. With the exception of the first two such resolutions and the resolution adopted in 1939, it was specifically designated that each of said banks should receive equal amounts by way of deposits, or approximately so. In accordance with the direction of the township board, the treasurer established an account in the defendant bank and presumably did likewise in the Peoples State Bank.

It is conceded that the account with defendant was established in accordance with the following agreement:

"TOWNSHIP OF MONGUAGON
"Individual Account Requiring Three Signatures,
"TRENTON STATE BANK
"TRENTON, MICHIGAN

---

* 1 Comp. Laws 1929, § 1017 (Stat. Ann. § 5.69).

"The bank is hereby authorized to recognize the signature executed herewith in payment of funds or transaction of any other business of said party.

"In receiving items for deposit or collection, this bank acts only as depositor's collection agent, and assumes no responsibility beyond the exercise of ordinary care. All items are credited subject to final payment in cash or solvent credits. This bank shall have the right to forward items to correspondents including any Federal Reserve Bank and this bank shall not be liable for default or neglect of said correspondents nor for losses in transit, nor shall any correspondent be liable except for its own neglect. The depositor specifically authorizes this bank to authorize Federal Reserve Banks to handle such items in accordance with provisions of Regulation 'J' series of 1930 of the Federal Reserve Board, effective September 1, 1930, and/or such alterations or amendments thereto as may from time to time be adopted by such board.

"This bank or its correspondents may send items directly or indirectly to any bank without investigation of its standing, including the payor, and accept drafts or credits as conditional payment in lieu of cash. This bank may charge back any item, at any time before final payment whether returned or not, also any item drawn on this bank not good before the close of business on the day deposited. In case of bills of lading, drafts or other deposited items placed to the credit of the shipper or depositor who has been suffered to check against them, this bank at its option shall be deemed the bona fide holder of such items and no interest in the goods shall remain in the shipper or depositor.

"On the first of each month cancelled checks and statements of account covering the transactions of the preceding month will be ready for delivery to the undersigned. If the undersigned is a depositor at the main office of the bank, the same will be mailed to and at the risk of the undersigned, unless directions are given below that the same are to be held at

the bank to be called for. If the undersigned is a depositor at one of the branches of the bank, such cancelled checks and statements of account will on the first of each month be ready for delivery to the undersigned when called for at such branch. The undersigned agrees to examine the same and that all objections to any item thereof for any cause whatsoever (whether then known or unknown) not made on or before the 15th day of the month succeeding that covered by such statement, shall be absolutely barred and waived.

"Please typewrite name on this side.
"WILLIAM F. VON MOLL
"FRANK MATTHEWS
"FRANCIS S. THOMAS.
"Write signature on this side.
(Signed) W. F. VON MOLL,
        Supervisor
"(Signed) FRANK MATTHEWS,
        Treasurer
"(Signed) FRANCIS S. THOMAS,
        Clerk."

During the years 1940, 1941, and 1942, various checks payable to the treasurer of Monguagon township and indorsed by him for deposit were presented to the defendant bank. In some instances such checks were cashed by defendant, and it is claimed that a total of $1,577.04 was paid to Matthews by defendant. In other instances deductions were made from the checks, the amount thereof being paid to the treasurer and the balance deposited to the credit of the township. The aggregate of the cash payments to the treasurer was $3,915.67. Handling of the account in defendant bank, and withdrawals therefrom, are not involved in the case.

In April, 1945, plaintiff brought suit against defendant in reliance on its assignment from the township board, claiming in substance that defendant acted wrongfully in making the cash payments to

Matthews and that defendant was in consequence liable to plaintiff. The declaration further alleged that on information and belief the sums drawn by Matthews were not redeposited to the credit of the township nor used for its benefit, but were converted by Matthews to his own use. It is apparent that plaintiff's alleged cause of action sounds in tort. However, the second count of the declaration, while repeating the averments of wrongful conduct as set forth in the first count, purports to be in assumpsit. The argument is made that defendant was bound to account to the township in the full amount of the checks received by it from the treasurer, whether cashed or deposited, and that having failed to do so it is now liable to plaintiff. Defendant points out that the assignment on which plaintiff relies does not cover any such asserted cause of action. Plaintiff's right to recover in this case must depend on whether it has sustained by proper proofs its theory that defendant was guilty of wrongful conduct resulting in damage to the township, which plaintiff is entitled to recover by virtue of a right of subrogation under the assignment.

On the trial of the case plaintiff offered proofs tending to show the facts above set forth. Presumably for the purpose of establishing a shortage, it offered in evidence as exhibits an audit and a report. The record justifies the inference that the exhibits were ostensibly based on the books of the township. Said books were not offered in evidence, nor was the deposition of the auditor, previously taken, formally offered. Counsel for plaintiff indicated at one time that he would read the deposition, but it does not appear that he undertook to do so. An objection to the audit and the report was sustained. The testimony disclosed that Matthews died in the fall of 1946, before the trial began.

When plaintiff rested its case counsel for defendant moved for judgment in its favor, contending in support of such motion that plaintiff had failed to show any misappropriation of township funds by the treasurer or that the defendant was guilty of wrongful conduct in making to Matthews the payments involved in the case. The motion was taken under advisement, whereupon defendant rested. After the submission of the case the trial judge filed an opinion holding that plaintiff had not sustained the burden of proof resting on it, in that it had failed to show misappropriation of the money paid by defendant to Matthews. Judgment was entered accordingly, and plaintiff has appealed.

The first question for consideration is whether the trial court erred in sustaining the objection to the exhibits above referred to, the audit and the report. We do not have the proffered exhibits before us. It does not appear that plaintiff asked to have these exhibits included in the record returned to this Court. As before noted, the books of the township, on which the audit and report were presumably based, were not offered in evidence; and the same situation obtained with reference to the deposition of the auditor, which was apparently taken for use on the trial but not actually offered. Under the situation presented, the trial court was not in error in sustaining the objection to the exhibits. In *Michigan Bankers' Ass'n v. Ocean Accident & Guarantee Corp., Ltd.*, 274 Mich. 470, this Court considered the admissibility of a bank examiner's report in a case involving the solvency of a bank at a certain time. The books of the bank were in court. Commenting on the situation, it was said:

"It is altogether likely that had the figures contained in the audit of the bank examiner been offered in evidence stripped of this inadmissible matter, as a summary based upon the books of the bank,

they might have been admitted, it being a general rule that where books and documents introduced in evidence at the trial are multifarious and voluminous and of such a character as to render it difficult for the court or jury to comprehend the material facts without schedules containing abstracts thereof, it is within the discretion of the trial court to admit such schedules verified by the sworn testimony of the person by whom they were made. But, in all such cases, the procedural rule against unfair advantage as well as the right of cross-examination by the opposite party make it necessary the adverse party have an adequate opportunity to examine such schedules and compare them, if desired, with the original record to prepare for cross-examination. *Boston & Worcester Railroad Corp.* v. *Dana,* 1 Gray (67 Mass.), 83; 2 Wigmore on Evidence, § 1230 (5 Wigmore on Evidence [2d Ed.], § 1230); 1 Greenleaf on Evidence (9th Ed.), § 94; 1 Elliott on Evidence, § 210; 2 Jones Blue Book of Evidence, § 206.

\* \* \*

"The admission of the figures of the bank examiner was in the sound judgment and discretion of the trial court, as summaries based upon the examination and audit of the bank, but of themselves they were, as to the defendant, devoid of probative force, and hearsay, and excluded as such by the best evidence rule as applied by the trial court. The court did not err under the circumstances in rejecting the reports of the bank examiner as offered."

Likewise in *Thompson* v. *Walker,* 253 Mich. 126, it was said:

"The auditor could not testify from his examination, in advance, of the books, what they would show, if introduced in evidence. It is the books, the contents of which may be summarized, which must be present in court, and introduced in evidence, and the witness may testify to what the books show."

The principal question at issue is whether the proofs introduced by plaintiff on the trial were suf-

ficient to establish its right to recover against defendant. As before noted, both sides rested, and the case was in consequence submitted to the trial court on the merits. It was determined accordingly, and judgment was entered for the defendant on the basis of the trial court's finding that plaintiff had not sustained the burden of showing that Matthews was guilty of misappropriating the township funds here in question. If the township had been the party plaintiff here, the burden would have rested on it to establish by competent proof a shortage in the township funds, wrongful conduct on the part of the defendant in paying cash to Matthews on the checks, and damage to the township resulting therefrom. Under its claim of subrogation based on the assignment by the township board, plaintiff was in no better position. The alleged shortage was not established by competent proof. As above indicated, the audit and the report were apparently offered for that purpose but were properly held incompetent. The recitals in the resolution of the township board, by which plaintiff's alleged cause of action was assigned to it, cannot be regarded as substantive proof that Matthews was short in his accounts with the township. If any such effect were to be given to the resolution, it would be thereby rendered self-serving and incompetent on that ground for the purpose of establishing the alleged shortage. The resolution was presumably received in evidence to show the assignment. The recitals in question were based on the audit and the report, as to the contents of which we have no proof in the record before us.

Neither does it appear from the evidence that defendant acted wrongfully in making to Matthews the payments in question. In support of its claim in this regard, plaintiff relies on the decision in *Seaboard Surety Co.* v. *State Savings Bank of Ann Arbor,* 307 Mich. 48. There the plaintiff was surety

on the bond of the county clerk of Washtenaw county, and brought suit as assignee of said county. The proceeds of checks constituting payments of public moneys were permitted by the defendant bank to be deposited by the clerk in his personal account in the bank, although such checks were payable to him in his official capacity. It appeared, from the proofs introduced by plaintiff, that while a portion of the sums so deposited were paid over to the county on the checks of the clerk, the balance was drawn out for other purposes. One check in the sum of $93.-82, payable to the clerk in his official capacity, was cashed by the bank. It was undisputed that the money so drawn was not deposited to the credit of the county and that the county did not receive the benefit of it in any way. Under the proofs a misappropriation of the money not received by the county, for which plaintiff recovered judgment in the circuit court, was clearly shown. The judgment in plaintiff's favor was affirmed by this Court (3 justices dissenting) on the ground that, in allowing the clerk to deposit these checks in his private account in defendant bank, the latter had made itself a party to an unlawful act and was in consequence liable for resulting damage. It was declared in an opinion concurred in by 3 members of the Court that certain statutes of the State should be construed as applicable to the county clerk in the handling of public moneys, that his authority was limited accordingly, and that the defendant bank was bound to take cognizance of the situation. Two justices concurred in affirmance on the ground that while the statutes above referred to were not applicable, nevertheless the defendant had notice sufficient to put it on inquiry when it permitted the clerk to deposit public moneys in his personal account. Both opinions for affirmance predicated liability on the basis of the defendant's knowledge that the county clerk was con-

verting public moneys to his own use. As before stated, the proofs disclosed that checks drawn on such account for the private purposes of the clerk were honored, and the recovery was for the money which the county did not receive. The check that was cashed by the defendant bank was not specifically discussed in either affirming opinion. It may be inferred, however, that the majority of the Court considered that the defendant bank, through and because of its knowledge of the clerk's handling of his personal account, was charged with notice, or at least put on inquiry, as to the contemplated use of the proceeds of the check that was cashed.

In the case at bar there is, of course, no question as to the character of the funds constituting the proceeds of the checks payable to the township treasurer in his official capacity. Such proceeds were public moneys and it was the duty of the treasurer, under the statute above cited, to deposit them in one of the depositories designated by the township board. It was also his duty to maintain the deposits in the two banks in approximately equal amounts as directed by the resolutions of the board. If, in order to accomplish this result, Matthews had cashed a check in the defendant bank and had deposited the proceeds in the other depository such act would not have been wrongful. So far as this record shows, that is precisely what may have happened in the instant case. No attempt was made to prove what deposits were made to the credit of the township fund in the Peoples State Bank. The situation here presented is quite different from that involved in *Seaboard Surety Co.* v. *State Savings Bank of Ann Arbor, supra.* There the defendant bank knew, or should have known, that the clerk was misappropriating public funds. In the case at bar the proofs introduced by plaintiff on the trial were not sufficient to establish that fact.

Other questions argued by counsel in their briefs have been considered but, in view of the conclusions above indicated, do not require discussion. On the evidence before him, the trial court decided the case correctly. The judgment is affirmed, with costs to defendant.

BUSHNELL, C. J., and SHARPE, BOYLES, REID, NORTH, and DETHMERS, JJ., concurred.

BUTZEL, J., did not sit.