HELMER LEE v. HERBERT OSMUNDSON AND OTHERS.[1]

December 15, 1939.

No. 32,224.

[1]Reported in 289 N. W. 63.

*Catherwood, Hughes & Alderson,* for appellants.
*Alfred T. Vollum,* for respondent.

HILTON, JUSTICE.

Defendants appeal from an order of the district court for Mower county denying their motion to set aside the verdict, order one in their favor, or, if denied, for a new trial.

In this, an automobile collision case, considerable difficulty has been encountered in the litigation of an alleged claim for property damage. After the first trial a new trial was granted. This is an appeal based upon alleged errors in the second.

Shortly after midday on August 14, 1936, plaintiff, driving a one-and-one-half-ton truck, collided with defendants' truck operated by their employe, Ernest Boe. The accident occurred at the intersection of a county aid road and a township road. There was no "stop" sign at the intersection. The county road is about 20 feet wide and lies north and south; the township road is 15 or 16 feet wide and runs east and west. The former carries considerable traffic; the latter was only lightly traveled.

The county road and the portion of the township road east of the intersection are substantially level. But the west portion of the township road, commencing about 30 feet from the intersection, consists of two hills which can be regarded as one large one. Witnesses placed its length at from 400 to 800 feet and likewise varied in the estimates of the height. Some said it was 25 or more feet high while others estimated it was 40 feet above the level of the intersection.

Considerable evidence was adduced in an effort to establish that the natural and artificial conditions of the topography aided by high weeds and trees in leaf concealed the existence of the township road to a person driving north on the county road until the driver was close to the actual intersection. On each side of both roads were fences. At the line of the fence on the township road, according to plaintiff, one could not see the west portion of the

township road from the county road. About 25 trees were lined on the south "side of the road going east and west right in the edge where the fence comes up on the ridge." Plaintiff testified that on the west side of the county road there was a ditch and that west of it the ground rose "quite a bit." Likewise on the south side of the west portion of the township road there was a rise. "It was four or five feet up from the surface of the road, the bank." According to plaintiff, the township road was four feet lower than the sides.

On the township road, about 30 feet east of the intersection, was a small bridge. In the ditch on the east side of the county road weeds six or seven feet high were growing near the intersection. There were also weeds on the west side.

Immediately before the impact plaintiff was driving northerly on the county road, and defendants' truck was coming down the hill of the township road. Plaintiff claims the defendants' truck shot into the crossing, swung slightly to the north, struck the front of his truck, and continued down the township road, crossing the bridge before it was stopped. On the other hand, defendants assert it was plaintiff who struck their truck, damaging the back tire, for which there has been a counterclaim. This was the single item of damage to the truck although plaintiff's vehicle was badly smashed.

At the close of the testimony both parties moved for directed verdicts. While there is some indication that the trial court thought defendant was guilty of negligence as a matter of law, yet, as we understand the record, the court actually took the case away from the jury and decided it pursuant to the statement made to counsel as follows:

"I guess I better make it clean cut so there will be no question about the ruling. You gentlemen have both made a motion for a directed verdict. I guess that gives me a legal right to take the case away from the jury and decide it myself."

The court was under a misapprehension of law in this respect. Since Stauff v. Bingenheimer, 94 Minn. 309, 102 N. W. 694, for

the reasons there stated, there is not a waiver of the right to a jury trial simply because both litigants move for directed verdicts. If the evidence created a fact issue, reversal, in any event, must follow. A survey of the decisive testimony is therefore necessary.

The record justifies the conclusion that as to the negligence of defendants' driver, Boe, there was a fact issue created. Boe was hauling gravel to be dumped on the township road several hundred feet east of the intersection. He admitted that he knew of the county road and that it carried considerable traffic. The loaded truck totalled 22,000 pounds. He testified that as he came down the hill he put the truck in second gear so that the motor would act as a braking force. According to Boe, the truck's speed was 15 miles per hour when he entered the intersection although he admitted on cross-examination it might have been about 20 since he did not have a speedometer. By his testimony, it was necessary for him to reach a point 25 feet from the intersection before he could see northbound traffic on the county road, but at this point there was visibility for 80 to 100 feet. Boe was 20 feet from the intersection and plaintiff about 80 feet when Boe first saw him. Boe claims he entered the intersection at 15 miles per hour and, according to his testimony, was the first party into it. He claims plaintiff was moving about 30 miles per hour. Boe testified he did not apply his brakes, but drove down the township road until he regained control of the truck, crossed the bridge, and then stopped the truck so that it would be out of the way of others working on the job. It is plaintiff's claim that Boe came down the hill and entered the intersection at 35 miles per hour and that his excessive speed prevented him from stopping sooner than he did. This, of course, presents a question for the jury to determine. We cannot find in Boe's testimony, as plaintiff claims, an admission that he could not have stopped sooner than he did. What he did testify was that he could not stop sooner and still not obstruct the way of the other trucks working on the job. He did not testify that it was mechanically impossible to stop the truck sooner than he did. While the jury

might not believe Boe's account for his failure to stop sooner, still on this appeal we must take the testimony as it appears in order to determine if there was a fact issue. Boe testified he wanted to cross ahead of the plaintiff. We are unable to conclude as a matter of law that it was his intention to cross the intersection irrespective of the rights of plaintiff as a traveler on the road. The testimony immediately preceding the statement is sufficient to suggest that Boe thought if he swung slightly north and crossed in front of plaintiff an accident could be avoided. The jury is the proper body to determine the precise nature of Boe's conduct in this respect.

On the record, Boe's negligence was an issue for the jury. It was error to take the question away from it.

Likewise, the question of plaintiff's contributory negligence should have been given to the jury. Stated factually, plaintiff testified as follows. About 300 feet south of the intersection, his speed was 15 miles per hour. It was reduced to 10 or 12 miles per hour when he was ten feet from the intersection, and when he went over the south line of it he was "practically stopped." He stated that he looked to the west and saw defendants' truck coming when he was five feet from the intersection, and defendants' truck at this time was about ten feet from the crossing. According to plaintiff, it was impossible to see the truck sooner. Boe, on the contrary, testified it was possible to see from 80 to 100 feet on the county road from a point on the township road 25 feet from the intersection. Naturally, if Boe could see from his truck at that point, he could be seen by drivers on the county road also. Plaintiff explains that his slow speed was necessary because the road was rough and "washboardy." The accident happened a foot or two over the center line of the intersection. At this point plaintiff stated that he was "practically stopped."

. Plaintiff was confronted with his testimony given in the first trial to the effect that just before he came to the intersection he was driving at a speed of 15 miles per hour. He had previously

testified that he was going 10 or 12 miles per hour when the collision occurred.

Boe and another witness placed plaintiff's speed at 30 or more miles per hour. Evidence was adduced showing that for a considerable distance behind plaintiff's truck skid marks had been imprinted by the braked wheels. Another fact to be considered is that plaintiff had driven over the county road a number of times. In addition, there is a serious dispute as to whether proper warning flags were along the county road indicating there was road improvement work in the vicinity. This recital of the bulk of the decisive factors indicates there were substantial items of evidence in conflict, together with questions of credibility.

An additional element in the case requires comment. Plaintiff testified that he did not know there was a road running west of the county road at this point but did have knowledge of the road to the east. Plaintiff's counsel does not claim that plaintiff should be excused for any default on the ground that he did not know he was entering an intersection with roads coming from both the east and the west. Of course, under the rule of Dreyer v. Otter Tail Power Co. 205 Minn. 286, 285 N. W. 707, 287 N. W. 13, the knowledge that plaintiff possessed was sufficient to place him on notice of the probability of an intersecting road from the west as well as the east. While plaintiff testified that he did not know of the west portion of the road, he did testify that he looked to the west when he came to the point where visibility was for the first time unobstructed and observed defendants' truck as soon as it was possible to see it. What his testimony in the first trial was need not be related now. He testified that the corner was "blind" and that as soon as he saw defendant he "slammed" on his brakes. On the whole, plaintiff must be understood to rely on his due care under the circumstances rather than on any claim that he is outside the rule of the Dreyer case. And we understand that plaintiff has proceeded on this theory despite the testimony that he did not previously know of the west portion of the road. It is possible for a party to be in this situation and yet discover the inter-

section and observe the approaching vehicle and act as prudently as a person who possessed knowledge of all the facts.

In view of the fact that a new trial is necessary, comment on the receipt of testimony dealing with plaintiff's insurance is necessary. Over proper objection, counsel for plaintiff made extensive inquiry to show that plaintiff had only liability coverage. The obvious inference is that he did not have collision insurance to protect him from loss to his own property. This, of course, was clearly inadmissible. It was foreign to the issues of the case and immaterial to the proof of the cause of action. Introduction of such testimony can serve but one purpose. While we do not rely upon this erroneous receipt of evidence as a basis for reversal because of subsequent developments in the procedure, still we could not and would not approve a verdict for plaintiff should he ultimately succeed if such testimony were again introduced.

Discussion of the law as to right of way is unnecessary. This can be disposed of by proper instructions of the trial court on a new trial.

The order appealed from is reversed.

So ordered.