J. A. LEIFSON v. VALERIAN HENNING.
BARBARA GAIL LEIFSON v. SAME.
WOODROW WILSON v. SAME.[1]

May 16, 1941.

Nos. 32,746, 32,747, 32,748.

[1]Reported in 298 N. W. 41.

312

*Sexton, Mordaunt, Kennedy & Carroll*, for appellant.

*Faegre, Benson & Krause, Paul J. McGough,* and *Wright W. Brooks,* for respondents.

HILTON, JUSTICE.

The collision which gave rise to this lawsuit occurred about 1:30 a. m. November 4, 1939, on state highway No. 10, while Woodrow Wilson and a friend, Barbara Leifson, were returning to St. Cloud after an evening in Minneapolis. About two miles north of the village of Elk River at a place where No. 10 curves to the left, their car became involved in a collision with another car proceeding southward allegedly driven by the defendant, Valerian Henning. Plaintiffs' case went to the jury upon the theory that defendant was driving on the wrong side of the pavement and not keeping a proper lookout. The jury returned favorable verdicts for Woodrow Wilson, Barbara Leifson, and J. A. Leifson, her father, plaintiffs in the three cases. On appeal from orders denying his motions for a new trial, defendant contends that there was no evidence of neglect which justified a submission of that issue to the jury. Also, error in the admission of testimony is asserted and misconduct of counsel charged.

■ Most of the controversy at the trial concerned the identity of the driver of the southbound car. This car contained two occupants, Henning and Arthur Ness, owner, who died as a result of the collision. At the trial defendant maintained that he was not driving the car. However, in several conversations after the accident, defendant stated otherwise. The jury found him to be the driver. We believe that this and other findings have sufficient evidentiary support.

The jury might have found that as Wilson was driving north on No. 10 at about 35 to 40 miles per hour, keeping to his side of the pavement, he noticed a southbound automobile. When he was about halfway around a left curve, that car, "instead of turning * * * seemed to turn out into my lane, and I couldn't get away from it." When Wilson first noticed this maneuver the cars were about 18 feet apart. That car never did "get back onto its own side of the road again." Wilson turned to the right in an effort to avoid the impact. Though he did not remember the collision, he does remember the headlights of the southbound car being "around six feet ahead" of his car, which "was on the edge, on the right side" of the pavement. This evidence certainly justified the jury's conclusion that the driver of the Ness car collided with the Wilson car when it was helplessly proceeding on its own lane of traffic.

The sequence of events which brought defendant to the collision began earlier the same evening in St. Cloud. Defendant, beginning about eight p. m., went into various places, had some drinks, and shortly before midnight met Ness for the first time. Ness was not "perfectly sober," but Henning "didn't notice his condition." Shortly thereafter they left together in the Ness car. Because defendant "wanted to kill some time," he agreed to go with Ness to Minneapolis, although originally he had intended only to accept a short ride. Defendant says his memory was with him until they reached an overhead bridge located about six miles north of the place where the accident occurred. Thereafter defendant claims

to remember nothing until he awakened the following day in a St. Cloud hospital.

It is apparent that the jury rejected the defendant's testimony that he remembered nothing about the accident or the ensuing events. And well they might. They could have found that after the collision the defendant, although suffering from a compound fracture of the arm, was able to stop the first motorist to arrive, ask him for assistance in extricating the occupants of the Wilson car, and to inform him that the Ness car contained another person. Even the defendant's own witnesses saw him walking around at the scene of the collision. Along with the others, Henning was taken to the Anoka hospital. There, without assistance, he walked into the hospital, gave his age, name, occupation, place of residence, and family history. Between then and the middle of the morning ("nine to ten o'clock"), defendant was given two doses of morphine to relieve his pain. His respiration and pulse were good, and at eight o'clock he was given a sponge bath and alcohol rub. An hour or so later, to several different persons present, Henning definitely and unequivocally stated that he was driving at the time of the collision. Ness, he said, was sick from drinking. Immediately before the crash, Ness "lunged for me, grabbed the wheel, and after that I don't remember anything." Asked further by Wilson's aunt whether he was working for Ness, Henning replied, "No, I was just driving for him that night." In reply to a remark made by Dr. Clothier, who attended Ness, that "It's a funny thing that the drivers got the worst of this thing," Henning countered, "Ness was not driving * * * I was driving." On the question whether defendant was clear mentally when these statements were made, the jury had a choice between conflicting medical and lay opinion. In view of these categorical admissions arising as they did from defendant's personal knowledge, Binewicz v. Haglin, 103 Minn. 297, 115 N. W. 271, 15 L.R.A.(N.S.) 1096, 14 Ann. Cas. 225, there is little wonder that the jury concluded that defendant remembered much more than he admitted.

But this is not a case of mere uncorroborated admissions as contended by defendant. Other testimony supports the view that defendant was driving. The first witness to reach the accident stated that the Ness car was lying on its left or driver's side pointing south with its top on the pavement and its wheels on the shoulder toward the west. No windows in the car were broken. This witness saw Ness in the car, but was unable to open either of the doors on the right or passenger side. Only after the car had been lifted upright and with considerable effort could these doors be opened. Ness was "laying on the right-hand side on the floorboard * * * up against the cowl." He was so "wedged in" that we "just had to pull him out feet first." The left front door was open about "seven or eight inches." Ness, however, could not be removed that way because that side was so completely caved in that this door could not be opened any further.

There was much testimony to the contrary. Several witnesses said that the car rested not on its left side but on its right side, and that Ness was found on the left side behind the steering wheel. But we do not find the facts. How Henning got out of the car is not known. The jury apparently concluded that he got out on the left or driver's side before the car tipped over. Putting the defendant's own story together with the testimony that Ness was found on the right or passenger side of the car, the jury doubtless concluded that Henning was the driver on that fateful night. This record sustains that finding. It also sustains the finding that he was negligently proceeding upon the wrong lane of traffic, causing a collision with the Wilson car, which was endeavoring to escape. If Ness was as intoxicated and sick as defendant asserted, the jury could hold defendant for a failure to use greater care in preventing Ness from interfering with the operation of the vehicle.

█ Defendant raises certain questions as to the admission and exclusion of testimony. The action of the trial court in excluding upon objection a reference by Dr. Mork, defendant's witness, to a conversation with Dr. Clothier, plaintiffs' witness, by which de-

fendant sought to show the bias of the latter is not here for review as no exception was taken to the ruling. 6 Dunnell, Minn. Dig. (2 ed.) § 9724; Mutual Trust L. Ins. Co. v. Berg, 187 Minn. 503, 507, 246 N. W. 9. Nor was there any specification of error on this point in the motion for new trial. Clark v. Warner, 193 Minn. 564, 259 N. W. 62.

But we do have before us claimed error in the admission of certain testimony of Dr. Clothier and Dr. Evans, both appearing for plaintiffs, as violative of privilege. Dr. Clothier, over objection, testified to a conversation, above referred to, which he had with Henning while he was at the Anoka hospital. While it is certainly doubtful whether Clothier was attending the defendant "in a professional capacity" at that time, there is no doubt that the information which defendant revealed was not "necessary to enable him [the doctor] to act in that capacity." 2 Mason Minn. St. 1927, § 9814(4). The communications related wholly to a nonprofessional matter. Jacobs v. Cross, 19 Minn. 454 (523); Cherpeski v. G. N. Ry. Co. 128 Minn. 360, 150 N. W. 1091. As to Dr. Evans, who attended Woodrow Wilson and Barbara Leifson, he testified on rebuttal that Henning appeared to be clear mentally at about ten o'clock the next morning when he was asked by Henning to serve as his doctor. However, his observations had been made before he undertook professional services for Henning. Anyhow, there is some testimony to support a conclusion that both Dr. Evans and Dr. Mork were attending Henning. If so, defendant, by calling Dr. Mork to testify that he was in a mental fog, waived a right to insist that Dr. Evans withhold his opinion. Doll v. Scandrett, 201 Minn. 316, 276 N. W. 281.

In our judgment this case presents no occasion for review or application of the numerous decisions of this court on what constitutes misconduct of counsel. The defendant's change of story was so marked that plaintiffs' counsel could not refrain from commenting upon the coincidence of that change with a visit at the hospital by an insurance adjuster whose part in the investigation was a subject of frequent comment by both sides at the trial.

While some of the remarks were right on the line of propriety, they were not so unfair as would justify upsetting the verdicts.

Orders affirmed.