# GLEN DIX v. HARRIS MACHINERY COMPANY AND OTHERS.[1]

October 16, 1953.

Nos. 35,868, 35,869.

[1]Reported in 60 N. W. (2d) 628.

*Mahoney, Cragg & Barnett,* for appellants Harris Machinery Company and Clarence Peterson.

*Meagher, Geer, Markham & Anderson* and *O. C. Adamson II,* for appellant E. L. Kavli.

*Clifford W. Gardner* and *Robert P. Liesch,* for respondent.

Frank T. Gallagher, Justice.

This case comes to the writer on reassignment during the summer recess.

Action for personal injuries sustained by plaintiff on August 27, 1947, when he fell down an elevator shaft in a building located at

the southeast corner of Hampton avenue and Bradford street in St. Paul. The building was owned by defendant E. L. Kavli and was occupied by defendant Harris Machinery Company, a corporation, as lessee.

The jury returned a verdict against all defendants in the sum of $15,000. There are two appeals from an order denying the separate motions of defendants for judgment notwithstanding the verdict or for a new trial.

On appeal it is contended that the evidence does not establish the negligence of defendants, or any of them, and does establish plaintiff's contributory negligence as a matter of law. It is also urged that the court erred in receiving certain audits prepared by plaintiff's accountant and in certain of its rulings on evidence and instructions to the jury.

Plaintiff, a resident of Hill City, owned a general store there and a war surplus store at Hibbing and supervised the operation of both units personally. On August 27, 1947, at about 3:30 p. m. he arrived at the Harris Machinery Company located in the described building to purchase from it merchandise for the Hibbing store. Harris Machinery Company occupied part of the second floor of the building; other tenants occupied other portions of it. A freight elevator for all tenants was located in the center thereof.

Plaintiff first met defendant Clarence Peterson, an employee of Harris Machinery Company who was transacting business at a loading platform in the rear of the building. After a few moments plaintiff walked with him down the first floor corridor to the elevator for the purpose of taking it to the second floor where he was to make his purchases. He testified that the corridor was poorly lighted; that, when "we came to the elevator, and * * * stopped, * * * he [Peterson] reached down, raised the gate, and said, 'go ahead' so I stepped off in"; that he did this because Peterson had led him to believe that the elevator was at the first-floor level at that time; and that actually it was not there and in consequence, he stepped into space and fell some 13 feet to the basement, sustaining the injuries which form the basis of this action.

Peterson denied telling plaintiff to "go ahead" and testified that he opened the elevator shaft door only so that he might call to have the elevator lowered from the second floor. It is not disputed that there was no licensed elevator operator employed for this elevator and that there was no one on the second floor at the time who might have lowered it. Peterson had operated it on many occasions, and all of the tenants had used it whenever they had need for it.

The elevator was approximately 35 years old. When the gate to its shaft was down, the bottom of the gate was from four to six inches above floor level. It was not equipped with any locking or safety devices and could be raised or lowered regardless of the location of the elevator in the shaft at the time. The elevator could be put in motion by reaching over the gate and pulling a cord used for that purpose.

Certain ordinances of the city of St. Paul pertaining to elevators were then in effect and were received in evidence. They provided:

Ordinance No. 5988, § 1, 1941 Compiled Ordinances of City of St. Paul:

"No person, firm or corporation, owning or operating freight elevators in the City of St. Paul shall use or allow to be used freight elevators for the purpose of carrying passengers."

Ordinance No. 7210, § 14-39 (c), Building Code of City of St. Paul:

"* * * All manually and power operated gates or doors shall be equipped with interlocks."

M. S. A. 183.35, likewise in effect at the time, provides:

"In any building occupied * * * by two or more tenants and in which * * * two or more tenants use jointly the same elevator for the purpose of moving persons or freight from one floor to another, it shall be the duty of the *owner of the building* to provide a competent person or persons to regularly operate such elevator * * *." (Italics supplied.)

At the close of the trial, counsel for the building owner requested the trial court to instruct the jury that:

"* * * Both defendants E. L. Kavli and Harris Machinery Company are chargeable with negligence for the violation of this ordinance [7210] in the ownership and operation of the involved elevator."

At that time no objection to this request was made by counsel for Harris Machinery Company, and the court instructed the jury as follows:

"The jury is further instructed that it appears as a matter of law that each of the defendants is guilty of negligence in that the violation by the defendants of the ordinances received in evidence is negligence as a matter of law, and that the only questions to be submitted to you to determine are:

"First, whether the admitted violations of the ordinances referred to were the proximate, direct or legal cause of plaintiff's harm; and, second, whether the plaintiff himself was guilty of contributory negligence as that term has been defined for you; and, third, the question of damages."

The court, after reading § 183.35, instructed the jury that:

"The party who charges another with violation of a statute must show that such violation, if it existed, was the proximate cause of the accident."

At the close of the instructions, defendants excepted to the instruction that:

"* * * it appears as a matter of law that each of the defendants is guilty of negligence in * * * the violation * * * of the ordinances received in evidence * * *."

■ We are of the opinion that the evidence was sufficient to justify the instruction that it appeared as a matter of law that each of the defendants was guilty of negligence in connection with the violation of the ordinances received in evidence. It is not disputed that the elevator gate was not equipped with an interlock as required by ordinance No. 7210, § 14-39 (c). The jury was instructed to determine whether the violation of this ordinance was the proxi-

mate cause of the accident. We find no error in the submission of this question to the jury under the instructions given. Had the gate been equipped with an interlock as required, it could not have been opened unless the elevator was at the first-floor level at the time. Evidence of such facts would appear adequate to support a finding that violation of this ordinance constituted the proximate cause of the accident. Heitman v. City of Lake City, 225 Minn. 117, 30 N. W. (2d) 18; Judd v. Landin, 211 Minn. 465, 1 N. W. (2d) 861; 4 Dunnell, Dig. & Supp. §§ 6999, 7000.

■ Defendants Harris Machinery Company and Peterson assert, however, that this ordinance, while applicable to the building owner, has no force and effect as to Harris Machinery Company or its employees, since Harris Machinery Company was merely a tenant of only a portion of the premises. Ordinance No. 7210, § 14-39(c), however, by its terms is not limited to building owners in its application. It directs that all manually and power-operated elevator gates be equipped with interlocks, and the operation of an elevator without such gates would constitute a violation of the ordinance regardless of where responsibility rested for furnishing such equipment. It is not disputed that at the time of the accident Peterson was operating the elevator gate and that this gate was not equipped with interlocks as required by the ordinance.

Plaintiff's testimony was to the effect that he was an invitee on the premises and that his contemplated use of the elevator was at the direction of Peterson. Thus it appears as a matter of law that these defendants were guilty of violating the ordinance in operating the elevator and its gates at a time when they were not equipped as required thereby. This constituted negligence and, if such negligence were determined to be the proximate cause of plaintiff's injuries, it would follow that they were responsible therefor. Judd v. Landin, *supra;* Dux v. Ringdahl, 182 Minn. 611, 235 N. W. 383; Anderson v. Settergren, 100 Minn. 294, 111 N. W. 279; 4 Dunnell, Dig. & Supp. § 6976; 19 Minn. L. Rev. 666. It is clear that the court did not err in charging that they were guilty of violating this ordi-

nance and instructing the jury to determine whether such negligence constituted the proximate cause of the accident.

■ Ordinance No. 5988, § 1, provides that no person or corporation owning or operating a freight elevator shall use it or allow it to be used for carrying passengers. It is the contention of defendant E. L. Kavli, the owner of the building, that the evidence would not sustain a finding that he was guilty of a violation of this ordinance; that any action on the part of the defendant Harris Machinery Company or its employees in carrying passengers on the freight elevator without his knowledge would not constitute negligence on his part; and that, hence, the trial court erred in instructing the jury that "it appears as a matter of law that each of the defendants is guilty of negligence in * * * the violation * * * of the ordinances received in evidence * * *."

By virtue of M. S. A. 183.35, responsibility for the operation of this particular elevator rested solely upon the building owner. The statute provides that it shall be the duty of the owner of the building to provide a competent person to regularly operate an elevator used by two or more tenants of the building. It is not disputed that the elevator was used by two or more tenants of the building and that the statute was, therefore, applicable. One of the duties imposed upon a regular operator, and hence upon the building owner, would be compliance with the ordinance relating to restrictions against the carrying of passengers on freight elevators. This responsibility could not be avoided by the owner's failure to comply with the statutory requirements relative to providing a competent operator, and, in consequence, liability would rest upon him for injuries proximately caused by negligence arising out of the use of the elevator in contravention to the ordinance. It is clear from the foregoing that the court was not in error in giving the challenged instruction. Judd v. Landin, 211 Minn. 465, 1 N. W. (2d) 861; Dux v. Ringdahl, 182 Minn. 611, 235 N. W. 383; Anderson v. Settergren, 100 Minn. 294, 111 N. W. 279; 4 Dunnell, Dig. & Supp. § 6976; 19 Minn. L. Rev. 666.

■ It is the contention of the defendants Harris Machinery Company and Peterson that the evidence does not establish their violation of ordinance No. 5988, § 1. They assert that Peterson did not invite plaintiff to become a passenger on the elevator; that, if plaintiff were held to be a passenger as ·contemplated by the ordinance, he would be equally guilty of a violation thereof; and that the term "used" in the ordinance required proof of more than an isolated instance of usage before a violation of the ordinance could be said to have been established.

Insofar as these defendants are concerned, we feel that the evidence is sufficient to sustain a finding that plaintiff had been invited to use the elevator as a passenger and was injured in the process of doing so. There is first his own testimony that he was directed by Peterson to "go ahead" after the elevator gates had been opened. There is the testimony of Peterson to the effect that he knew plaintiff was following him down the corridor and intended to use the elevator to go to the second floor to make his purchases and that at no time did he direct him to do otherwise. Such evidence would seem adequate to support a finding that plaintiff was a passenger at the time of his accident within the contemplation of ordinance No. 5988, § 1. Aide v. Taylor, 214 Minn. 212, 7 N. W. (2d) 757; Honer v. Nicholson, 198 Minn. 55, 268 N. W. 852; 7 Dunnell, Dig. (3 ed.) § 3473.

We do not feel that the actions of plaintiff in accepting passage on this elevator constituted a violation of ordinance No. 5988, § 1. It is directed at the "firm or corporation, owning or operating" the freight elevator and forbids such designated parties' allowing the use of the elevator for passengers. There is no imposition against plaintiff or anyone in his classification thereunder. The elevator was not designated a "freight·elevator" and no notice was affixed thereto forbidding its use by passengers. We hold such evidence would not establish a violation of the ordinance by plaintiff.

Nor do we feel, as appellants contend, that the words "use" and "used" as employed in ordinance No. 5988, § 1, contemplate a

customary practice or degree of continuity and, hence, that the isolated act of carrying plaintiff in this instance would not be violative thereof. It would seem that under the language of the ordinance even an isolated or occasional use of a freight elevator for passenger purposes is prohibited. In Lee v. Aetna Cas. & Surety Co. (2 Cir.) 178 F. (2d) 750, 751, which involved an isolated use of an elevator contrary to the terms of an insurance policy, the court stated:

"* * * As always, the language is to be interpreted by its purpose, and the purpose was to exclude liabilities occasioned by the insured's availing itself of an elevator * * *. One 'uses' a thing when one 'makes use' of it, and it would be absurd to say that a shopkeeper does not 'make use' * * * when he invites a customer to step into it, so that he might be lifted to that part of the shop where the goods are kept which the customer wishes to buy."

Here the ordinance is intended to protect individuals against injuries which might arise from the use of freight elevators for passenger service. As such, it would seem that even a single act of usage would come within the provisions thereof.

■ Plaintiff submitted the hospital chart and record establishing the history of his injuries and treatment. Therein a statement, written by Dr. W. H. Watson, the hospital attendant, set forth:

"Pt. stepped into an open elevator shaft about 4 P. M. 8/27/47. Fellow worker had raised gate to call up shaft & pt walked in, thinking elevator was there. Is dark in that part of bldg."

No testimony was then submitted by anyone else that this statement had been made by plaintiff.

Subsequent to the admission of the chart and record without objection in the examination of plaintiff, the following proceedings developed:

"Q. [Mr. Gardner, counsel for plaintiff] Did you tell them Pete [Peterson] was a fellow worker of yours?

"A. No.

"Mr. Geer [Counsel for E. L. Kavli]: We object to this as an effort to impeach his own client.

\* \* \* \* \*

"The Court: Overruled.

\* \* \* \* \*

"Mr. Geer: I object to the history sheet and the hospital record is hearsay and self-serving.

\* \* \* \* \*

"The Court: Overruled."

With reference to the words "fellow worker," as written in the hospital record, plaintiff then testified without objection as follows:

"\* \* \* I said the fellow that worked there said that he called up the shaft.

\* \* \* \* \*

"Q. [Mr. Gardner] \* \* \* repeat what you told them [in addition].

"Mr. Geer: We object to this as hearsay \* \* \* and self-serving.
"The Court: Overruled.

\* \* \* \* \*

"A. Well, that we were walking down this dark hallway. We come to the gate. We stopped. Pete reached down and raised the gate and said, 'Go ahead,' so I stepped in.

"Q. \* \* \* Did you tell that to \* \* \* Watson?

"A. Yes.

"Q. Does your version appear on it [the hospital record]?

"A. No.

\* \* \* \* \*

"Mr. Geer: We move that all of the testimony of Mr. Dix be stricken as hearsay \* \* \*.

\* \* \* \* \*

"Mr. Geer: \* \* \* self-serving and incompetent.

"The Court: Denied."

On appeal defendant Kavli asserts that the court erred in receiving the above evidence over objection, thereby permitting plain-

tiff to impeach his own documentary evidence. With this we do not agree. The only objection interposed by defendant on the ground of impeachment was as to the query whether plaintiff had told Dr. Watson that Peterson was a "fellow worker." Counsel objected to this question as an "effort to impeach his own client." Since plaintiff had previously testified that defendant Peterson was not a fellow worker, and this fact was conceded by all defendants, it is obvious there was no attempt here to impeach plaintiff, as the objection suggested and that, hence, it was properly overruled. The statement written by Dr. Watson was in error. The testimony thus submitted was an attempt to correct this error and did nothing to discredit plaintiff's previous testimony, and no prejudice to any of the parties resulted.

With reference to the remaining testimony outlined, it is to be noted that it was received without objection and that the motion to strike it was not based upon the claim that it impeached documents submitted by plaintiff, as is now contended, but rather upon the ground that it was "hearsay, self-serving and incompetent." Whether objection on the latter grounds should have been sustained is not submitted for argument here. The sole argument now advanced thereon is that its admission was erroneous because it impeached plaintiff's documentary evidence, an objection not made during the trial. Accordingly, there is no basis for finding error in the proceedings outlined. Duenow v. Lindeman, 223 Minn. 505, 27 N. W. (2d) 421; Duluth, M. & N. Ry. Co. v. McCarthy, 183 Minn. 414, 236 N. W. 766; Schlecht v. Schlecht, 168 Minn. 168, 209 N. W. 883; 1 Dunnell, Dig. (3 ed.) §§ 384, 388a.

■ Defendants charge error in the court's reception of certain duplicate audits submitted by plaintiff on the issue of damages, which audits were attached to plaintiff's income tax returns and showed plaintiff's gains and losses for the years 1948, 1949, and 1950.

Plaintiff was a sole trader engaged in buying and selling surplus war goods. He did all of his buying, fixed the prices for resale of his merchandise, and personally attended to its sale except for

selling done by a clerk employed by him. He testified that, after the accident on August 27, 1947, and until the end of that year, he kept his own books and that during this period he was unable to attend government sales and had to purchase his merchandise from jobbers to his disadvantage.

Plaintiff's exhibit "L," a copy of an audit which was made by a Corwin A. Jones relative to plaintiff's business for 1947 and upon which plaintiff's income tax for that year was based, was received in evidence without objection. It indicated a net profit of $8,727.82 for 1947 despite the fact that plaintiff did not work for the last three months of that year. Exhibit "M," "N," and "O," prepared by a Roy Zacharias and used in connection with plaintiff's income tax reports for the years 1948, 1949, and 1950, showed a considerable reduction in plaintiff's income after the accident. They established a net profit of $1,919.52 for 1948 and $2,382.07 for 1949.

Defendants objected to these exhibits on the ground that they were not the best evidence. The trial court took the position that, because defendants had failed to object to exhibit "L" for 1947 when the business showed a substantial profit (the accident occurred August 27 of that year), it would be unfair to sustain objection to the later audits, stating in its memorandum: .

"* * * If defendants desired the original books and entries, it would seem that they would want them with respect to Exhibit L and not permit that to go in and then raise their objections to Exhibits M, N and O. In addition, there was testimony that these audits were attached to plaintiff's income tax returns and were the basis upon which he computed his income for the respective years.

\* \* \* \* \*

"The audits for the years in question together presented one complete picture or part of the evidence which was being brought to the attention of the jury. To allow a part of the picture or fact situation to go before the jury without objection and then rule out the other part would not seem logical or reasonable."

We are of the opinion that, when the defendants permitted the audit for 1947 to be received in evidence without objection, the

court was authorized in its discretion to receive in evidence similar audits for the years 1948, 1949, and 1950 so that the entire facts relative to plaintiff's business earnings might be before the jury. If defendants desired to withhold from the jury any of the audits respecting the business earnings of plaintiff, they should have objected to all. To permit plaintiff to introduce exhibit "L," the 1947 audit which was helpful to defendant, and prevent the introduction of the 1948, 1949, and 1950 audits, which showed his reduced earnings during those years, would give defendants an unfair advantage.

A reasonable discretion is allowed trial courts in the application of the best-evidence rule. The rule is not inflexible and must be applied with due regard to all circumstances. Mattson v. M. & N. W. R. Co. 98 Minn. 296, 108 N. W. 517. This court has said that copies of income tax returns are admissible as admissions of facts stated therein. Wentz v. Guaranteed Sand & Gravel Co. 205 Minn. 611, 287 N. W. 113; Kregel v. Cirkler, 158 Minn. 175, 198 N. W. 664.

While this court affirmed the trial court's refusal to admit tax returns under the circumstances there present in Schleiff v. County of Freeborn, 231 Minn. 389, 399, 43 N. W. (2d) 265, 271, it also indicated that the matter was within the discretion of the trial court when it said:

"* * * While under § 600.02 the court might justifiably have received these returns, nevertheless, in view of the fact that the original sources of information therefor were available and could have been produced by the same witness; and the further fact that the tax returns offered were submitted without evidence of their mode of preparation or other factors specified in § 600.02, we cannot see that their rejection constituted reversible error."

It is our opinion that the court's admission of the disputed exhibits here did not constitute reversible error. The trial was to ascertain the truth as to whether plaintiff suffered losses as a result of the accident. Duplicates of the disputed audits were filed with plaintiff's annual income tax returns. The business was more or less a one-man operation with which plaintiff was the most

familiar. There is every reason to believe that the audits represent the true facts. If they did not, plaintiff would find himself in serious complications with the tax departments. As stated by Mr. Justice Stone in Tiedt v. Larson, 174 Minn. 558, 564, 219 N. W. 905, 907:

"* * * it is the truth telling habit of such business records that makes them admissible. Their normal purpose to record fact, the magnitude and complexity of modern business is more and more requiring records which are not only truthful but complete. *The law therefore does not turn its back on them when in search of the truth.* * * *

"The law would strangely ignore the fixed habit and necessity of business to make correct entries of its transactions if it did not admit such entries as prima facie evidence of what they record." (Italics supplied.)

The court further said there:

"The sufficiency of the preliminary proof to admit 'regular entries' is for the trial judge. It is a problem with respect to which his discretion is not narrowly limited."

Affirmed.

THOMAS GALLAGHER, JUSTICE (dissenting).

I am of the opinion that the audits relating to plaintiff's business operations for the years 1948, 1949, and 1950 were inadmissible. They were received over defendants' objection that there was no foundation therefor and that they were not the best evidence. They indicated that plaintiff's business operations and his profits had been substantially curtailed following the accident. The court overruled the objections, taking the position that since the 1947 audit had been received without objection it would be unfair to reject the subsequent ones.

On cross-examination preliminary to defendants' objection, plaintiff admitted that his firm employed a bookkeeper who kept books and records from which it was possible to determine his net profits; that such books were at his place of business at Hill City; and that the challenged audits had been made up in part from memoranda

kept by him or kept by his bookkeeper under his direction. It was then disclosed that the 1947 audit was prepared by Corwin A. Jones of Grand Rapids, and that the 1948 and 1950 audits were prepared by Roy Zacharias of Hibbing. Neither of them nor the bookkeeper was present in court. The 1949 audit was received without proof of the identity of the auditor compiling it. The books and records upon which the audits were based were not submitted, although available to plaintiff at the time of trial. With reference to the 1947 audit, plaintiff was asked: "Do you understand these things?" To which he answered, "No." He testified further that his testimony relative to the condition of the business was based upon the audit, although he did not claim to be an auditor.

I am of the opinion that the foundation for the reception of these audits, as set forth above, was insufficient. M. S. A. 600.02 (Uniform Business Records as Evidence Act) requires that before a record of an act or condition be competent as evidence, the custodian thereof or other qualified witness must testify as to its identity and as to the mode of its preparation. It must appear to have been made in the regular course of business at or near the time of the act or condition it records. It is *then* left to the court to determine whether the sources from which it is derived and the method and time of its preparation justify its admission. Here it is obvious that the audits in question met with few, if any, of the above requisites. They do not purport to have been made at the time of the transactions which they record, and they were not made in the regular course of business. Their identity and the mode of their preparation was not established by the auditors preparing them. The original books and records upon which they were based, although available to plaintiff, were not submitted in evidence.

The general rule applicable in situations of this kind is set forth in 20 Am. Jur., Evidence, § 409, as follows:

"* * * An audit made by * * * a private auditor is inadmissible in evidence as proof of the original records, books of account, reports, etc., since such proof is not the best evidence available * * *."

Minnesota is in accord with this principle. As this court stated in Schleiff v. County of Freeborn, 231 Minn. 389, 399, 43 N. W. (2d) 265, 271, in construing § 600.02:

"* * * the original books and records, rather than the tax returns, were the best evidence of the facts sought to be proved. They would have been admissible under the uniform business records as evidence act, M. S. A. 600.02 to 600.04, had they been offered in conjunction with * * * testimony * * * as to their authenticity, identity, and mode of preparation, and as to the fact that entries therein were made in the regular course of business at or near the time of the act or condition recorded, * * *."

See, also, Flemming v. Thorson, 231 Minn. 343, 43 N. W. (2d) 225; Wilson v. Moline, 229 Minn. 164, 38 N. W. (2d) 201; Linnell v. London & Lancashire Ind. Co. 74 N. D. 379, 22 N. W. (2d) 203; Rose v. Kahler, 151 Neb. 532, 38 N. W. (2d) 391; American Surety Co. v. Trenton State Bank, 323 Mich. 276, 35 N. W. (2d) 260.

The failure of defendants' counsel to object to the 1947 audit would not, in my opinion, constitute a waiver of the right to object, on valid grounds, to the later audits when they were subsequently offered. These documents went directly to the issue of damages, and it would seem to me that a new trial limited to this issue should be ordered.

CHRISTIANSON, JUSTICE (dissenting).

I concur in the dissent of Mr. Justice Thomas Gallagher.

MR. JUSTICE NELSON, not having been a member of the court at the time of the argument and submission, took no part in the consideration or decision of this case.