LUCILLE M. OSTROWSKI v. MARSHALL D. MOCKRIDGE.
ALBIN I. OSTROWSKI v. SAME.[1]

May 28, 1954.

Nos. 36,088, 36,089.

[1]Reported in 65 N. W. (2d) 185.

*Fowler, Youngquist, Furber, Taney & Johnson, E. A. Danforth,* and *F. W. Thomas,* for appellant.

*Clifford W. Gardner, A. R. Segal,* and *Irwin Ketroser,* for respondents.

THOMAS GALLAGHER, JUSTICE.

Two actions, one by Lucille M. Ostrowski and one by Albin I. Ostrowski, her husband, for damages arising out of an automobile accident which occurred June 30, 1948. Defendant admitted responsibility for the accident, and the only issue for determination was the extent of damages sustained by each plaintiff.

The cases were tried together. The jury returned a verdict for Lucille M. Ostrowski in the sum of $12,000 for injuries sustained, and $3,000 for Albin I. Ostrowski covering damages to automobile, loss of wife's services, and medical expenses paid or incurred. This is an appeal from an order denying defendant's subsequent motions for a new trial.

On appeal it is contended that the trial court erred (1) in failing to grant defendant's motions for a mistrial because of several references in Lucille M. Ostrowski's testimony to "the insurance company"; (2) in receiving over objection memorandum covering part of Lucille M. Ostrowski's employment record furnished by her employer; and (3) in sustaining objections to testimony of Dr. Albert J. Lenarz and Mrs. Albert J. Lenarz called by defendant on the ground of privilege. It is also contended that the verdicts are so excessive as to indicate passion and prejudice on the part of the jury.

The accident occurred June 30, 1948, near the village of Rice. The following morning Lucille M. Ostrowski, who was then pregnant, visited the office of Dr. Albert J. Lenarz, physician at Browerville, for treatment for injuries sustained therein. Dr. Lenarz examined

her in the presence of her husband and in the presence of Mrs. Lenarz who was acting as his nurse.

The same day plaintiffs commenced a five-day trip from Browerville to California where they lived. Lucille M. Ostrowski testified that on this trip her back, neck, right arm, and face gave her considerable pain; that at Salt Lake City she suffered a miscarriage; that after her arrival in California because of continued pain due to the accident she was required to be treated repeatedly by physicians there and was forced to be absent from her employment on numerous occasions; and that such pain and treatments continued at intervals to the date of trial.

Prior to trial defendant had submitted a number of interrogatories to her, including a request to "Give your employment record from June 30, 1948, to date, including the names and addresses of employers and dates actually worked." She responded as follows: "Plaintiff will furnish an employment record direct from employer for all employment since June 30, 1948." At the trial she submitted testimony that subsequent to the accident she had been employed only by American Can Company and that in response to defendant's request she had asked it to furnish her with a record of such employment. A record was thereupon prepared by its supervisor of personnel. It was submitted and received in evidence, over defendant's objection as to foundation, as a memorandum from which Lucille might refresh her memory. She testified that such record was true and correct and compared with her notes covering her loss of time and that it had not been altered in any way from the time she had received it from her employer. The original records upon which it was based were in Los Angeles at the time of trial. She was cross-examined at length with respect to statements thereon which set forth the reasons for her absence from her employment. Based upon all such evidence it appeared that she had lost approximately 1,000 hours of employment since the accident and at a wage rate varying between $1.19½ to $1.24½ per hour.

During the trial Lucille was asked by her counsel whether she wore glasses, and she replied: "Their insurance company told me to

wear glasses." On motion this answer was stricken. A short time later she was asked whether she went to a hospital at Los Angeles at defendant's request for examination by two physicians there, and she replied: "I guess it was his because it was an insurance company." The court admonished her to simply answer the questions, and she then stated: "Well, it was the insurance— * * * It was their doctors I went to." The court again admonished her to only answer the questions and not volunteer information.

Still later in the trial on cross-examination she was asked whether she had been examined by Dr. Joseph M. Sprafka on behalf of defendant. To this she replied: "I went for you [defendant's counsel] * * * I don't know whose request it was, but I was given the paper while they were picking the jury * * * and when I got over there I thought Mr. Gardner had sent me and I didn't know who, anyway I told him [Dr. Sprafka] I didn't know I thought it was the other insurance company." This answer was stricken. In each of the instances referred to defendant moved for mistrial on the ground that the reference to the insurance company was prejudicial, but such motions were denied.

During the trial defendant called upon Dr. Albert J. Lenarz for testimony with respect to his examination of plaintiff immediately after the accident. Plaintiff's objection to his testimony on the ground of privilege was sustained. Defendant thereupon offered to prove by him that when Lucille was examined on July 1, 1948, she had told him that she was one or two weeks past her period and was possibly pregnant; that he had examined her and found no visible sign of any bodily injury; and that in June 1950 she had called upon him for treatment for a sore throat and had made no reference then to injuries sustained in the accident. Objection to this offer was likewise sustained on the ground of privilege.

Defendant then called Mrs. Albert J. Lenarz, wife of Dr. Lenarz, who was present in the capacity of a nurse in Dr. Lenarz' office at the time he treated plaintiff immediately following the accident. Objections to her testimony and to an offer to prove evidence similar

to that offered on behalf of Dr. Lenarz were sustained on the ground of privilege.

Prior to the foregoing Lucille had referred to her call upon Dr. Lenarz immediately after the accident and had testified that he had prescribed certain pills for her. On cross-examination she had referred to her second call at his office in June 1950. Her counsel, in cross-examining Dr. Sprafka, physician called by defendant, as the basis for a hypothetical question had stated: Assuming that "next day a. m. saw Dr. Lenarz because she felt shaky, ached all over back and shoulders and was getting pain in right side and Dr. recommended X-ray, but she said she had to leave for Los Angeles and had not time * * *." A number of other physicians called by her testified as to her physical condition. It is defendant's contention that the above testimony and references, as well as the fact that her husband was present when she was examined by Dr. Lenarz, in effect constituted a waiver of her right to claim privilege with respect to the testimony of either Dr. or Mrs. Lenarz.

■ We do not feel that there was a sufficient reference to the fact of insurance in the instances cited to constitute reversible error. In Odegard v. Connolly, 211 Minn. 342, 345, 1 N. W. (2d) 137, 139, it was stated:

"* * * So long as the insurance is not featured or made the basis at the trial for an appeal to increase or decrease the damages, the information would seem to be without prejudice."

In the cases relied upon by defendant (Jeddeloh v. Hockenhull, 219 Minn. 541, 18 N. W. [2d] 582; Lee v. Osmundson, 206 Minn. 487, 289 N. W. 63; Prescott v. Swanson, 197 Minn. 325, 267 N. W. 251; Brown v. Murphy Transfer & Storage Co. 190 Minn. 81, 251 N. W. 5), the existence of liability insurance was repeatedly emphasized either by questioning or in closing arguments of counsel.

Here the references to insurance companies do not seem to have been given undue emphasis or to have been made pursuant to a design or to create prejudice. On the contrary, it appears that the witness was endeavoring only to answer questions truthfully and to the best of her ability.

■ With reference to the exclusion of the testimony of Dr. Lenarz on the ground of privilege, M. S. A. 595.02(4) provides:

"A licensed physician or surgeon shall not, without the consent of his patient, be allowed to disclose any information or any opinion based thereon which he acquired in attending the patient in a professional capacity, * * *."

And that:

"* * * no oral or written waiver of the privilege hereinbefore created shall have any binding force or effect except that the same be made upon the trial or examination where the evidence is offered or received;"

Defendant contends that plaintiff waived the privileged character of her conversations with and treatment by Dr. Lenarz by submitting testimony as to her disabilities and by furnishing testimony of other medical experts with reference thereto. We have held to the contrary in a number of cases. See, Polin v. St. Paul Union Depot Co. 159 Minn. 410, 199 N. W. 87; Hilary v. Minneapolis St. Ry. Co. 104 Minn. 432, 116 N. W. 933; McAllister v. St. Paul City Ry. Co. 105 Minn. 1, 116 N. W. 917. As stated in the Polin case (159 Minn. 412, 199 N. W. 87):

"* * * Defendants insist that plaintiff waived the right to invoke this statute * * * by testifying concerning such injuries and the treatment given. The legislature has not seen fit to say that such acts shall operate as a waiver. * * * This court, in accordance with the weight of authority, has adopted the rule that bringing an action, unless it be against the physician himself for malpractice, or testifying concerning the injuries sustained and the treatment received, unless such testimony relates to communications made to the physician or questions the propriety of his treatment, is not a waiver of the privilege. Marfia v. Great North. Ry. Co. 124 Minn. 466, 145 N. W. 385; Burke v. Chicago & N. W. Ry. Co. 131 Minn. 209, 154 N. W. 960. See also Green v. Town of Nebagamain, 113 Wis. 508, 89 N. W. 520; Cohodes v. Menominee & M. L. & T. Co. 149 Wis. 308, 135 N. W. 879; May v. N. P. Ry. Co. 32 Mont. 522, 81 Pac. 328;

4 Ann. Cas. 605; Noelle v. Hoquiam L. & S. Co. 47 Wash. 519, 92 Pac. 372."

Here Lucille's only reference to her consultation with Dr. Lenarz was that because of pain and discomfort after the accident she visited Dr. Lenarz who gave her some medicine which she took and some orders which she obeyed. Any further information with reference thereto was brought out through cross-examination by defendant's counsel. Her husband, who was present at the consultation, testified that after looking her over Dr. Lenarz gave his wife some prescriptions. The basis for a hypothetical question submitted by Lucille's counsel to Dr. Sprafka called by defendant referred only to a prescription Dr. Lenarz had given to Lucille. In our opinion these vague and indefinite references to the call upon Dr. Lenarz would not come within the waiver contemplated by § 595.02(4).

Previous decisions cited by defendant are not in conflict with this conclusion. In Burke v. Chicago & N. W. Ry. Co. 131 Minn. 209, 154 N. W. 960, plaintiff's doctor had testified without objection for some time, the privilege being claimed only when his testimony became unfavorable to plaintiff. In Maas v. Midway Chevrolet Co. 219 Minn. 461, 18 N. W. (2d) 233, the patient was held to have waived the privilege of calling his physician to the stand. In Doll v. Scandrett, 201 Minn. 316, 276 N. W. 281, and Leifson v. Henning, 210 Minn. 311, 298 N. W. 41, in each of which two physicians had made a unitary examination of plaintiff, we held plaintiff's submission of the testimony of one of such examiners constituted a waiver of the privilege as to the other. It is clear that all such situations are quite distinct from the facts claimed as constituting waiver in the instant case.

■ As to Mrs. Albert J. Lenarz, we are of the opinion that the privilege claimed should extend to her. Clearly she was acting in the capacity as agent for Dr. Lenarz at the time of his examination of Lucille. Obviously any communications which were transmitted to Dr. Lenarz in her presence were made for the purpose of treatment and privileged under the statute. The fact that they were overheard by the nurse would not, in our opinion, take from them

their privileged character. We can conceive of a different result had the nurse in attendance not been an agent or employee of the examining physician, as was the case in First Trust Co. v. Kansas City L. Ins. Co. (8 Cir.) 79 F. (2d) 48.

It is true the authorities on the question appear to be divided. A number of courts hold that the statutory privilege does not exclude the testimony of a nurse attending the physician.[2] Other courts have permitted such testimony where it appears the information sought to be elicited was acquired from sources separate and distinct from action in concert with a physician against whom the claim of privilege is made.[3] On the other hand, some jurisdictions take the view that the privilege extends by implication to nurses or attendants who are employees or acting under the direction of the physician examining or treating the patient.[4] In our opinion, the latter view to a greater extent carries out the intent and purport of the statute creating privilege.

■ We do not find material error in the use made of a memorandum prepared by Lucille's employer relative to her absences from work. It does not appear that it was received as an exhibit or read to the jury, or that the jury was allowed to examine it. It was compiled from the employer's payroll records in response to an interrogatory submitted by defendant in pre-trial proceedings and, although not attested to, was presented under circumstances lending credence to its authenticity. While there may be a question as to its admissibility as an exhibit (7 Dunnell, Dig. [3 ed.] § 3346), there can be little doubt that it could be used to refresh the memory of

---

[2]Southwest Metals Co. v. Gomez (9 Cir.) 4 F. (2d) 215; Weis v. Weis, 147 Ohio St. 416, 72 N. E. (2d) 245, 169 A. L. R. 668.

[3]Prudential Ins. Co. v. Kozlowski, 226 Wis. 641, 276 N. W. 300; First Trust Co. v. Kansas City L. Ins. Co. (8 Cir.) 79 F. (2d) 48; General Acc. Fire & Life Assur. Co. v. Tibbs, 102 Ind. App. 262, 2 N. E. (2d) 229; Wills v. National Ins. Co. 28 Ohio App. 497, 162 N. E. 822.

[4]Mississippi Power & Light Co. v. Jordan, 164 Miss. 174, 143 So. 483; Meyer v. Russell, 55 N. D. 546, 214 N. W. 857; Williams v. State, 65 Okl. Cr. 336, 86 P. (2d) 1015; Clapp v. State, 74 Okl. Cr. 144, 124 P. (2d) 267; Culver v. Union Pac. R. Co. 112 Neb. 441, 199 N. W. 794. See, also, 12 Minn. L. Rev. 396; 1945 Wis. L. Rev. 411.

the witness. The rule applicable is set forth in Ammon v. Illinois Cent. R. Co. 120 Minn. 438, 442, 139 N. W. 819, 820:

"* * * It is not essential that a memorandum used by a witness should be a book of original entry, or that it should have been made by the witness, if he saw it while the facts were fresh in his mind and can verify its correctness."

See, also, Culver v. Scott & Holston Lbr. Co. 53 Minn. 360, 55 N. W. 552; J. M. Paine & Co. v. Sherwood & Sewall, 19 Minn. 270 (315).

Here Lucille might have testified as to the facts summarized in the memorandum from her independent knowledge thereof. State v. Walso, 196 Minn. 525, 265 N. W. 345. In lieu thereof her counsel read from the memorandum in asking her questions as to its correctness. In consequence the jury thereby became familiar with its contents, and this defendant asserts was error. However, since the questions thus propounded might have been submitted directly without reference to the memorandum, we do not see how the method pursued was prejudicial. A trial court has wide discretion in permitting use of memoranda and in the references that may be made thereto. See, Dix v. Harris Machinery Co. 240 Minn. 218, 60 N. W. (2d) 628; Farmers Elev. Co. v. G. N. Ry. Co. 131 Minn. 152, 154 N. W. 954; Johnson v. Coles, 21 Minn. 108; Madigan v. De Graff, 17 Minn. 34 (52); Buckley v. United States (6 Cir.) 33 F. (2d) 713; see, also, cases cited in Annotation, 125 A. L. R. 24.

As stated in the Dix case (240 Minn. 230, 60 N. W. [2d] 635):

"A reasonable discretion is allowed trial courts in the application of the best-evidence rule. The rule is not inflexible and must be applied with due regard to all circumstances. Mattson v. M. & N. W. R. Co. 98 Minn. 296, 108 N. W. 517."

In the Dix case we approved reception of certain audits not prepared by or under the supervision or direction of the witness identifying them; not made at the time of the transactions they purported to record; and notwithstanding that the books from which they were compiled were available for submission in evidence. Their reception was justified on the ground that the witness testified

that they constituted the basis for his income tax returns, although the latter were not submitted; and on the further ground that an audit covering the year prior to those covered by the audits objected to had been received in the absence of objection, the court stating (240 Minn. 231, 60 N. W. [2d] 636) : "There is every reason to believe that the audits represent the true facts."

The reasoning thus expressed would seem equally applicable here where the memorandum was prepared in response to an interrogatory by defendant's counsel and where likewise there is every reason to believe the statements contained therein represented the true facts.

■ We do not feel that $12,000 as an award for the injuries and damages sustained by Lucille was so excessive as to indicate passion and prejudice. This covered lost wages, loss of future earnings, and pain and suffering, as well as permanent injuries. At the time of the accident she was 25 years of age and was "very healthy." As a result of the accident she sustained injuries to her neck and back which were severe and permanent. In addition, shortly thereafter she suffered a miscarriage. Subsequent thereto she has had frequent medical treatment for her back, neck, and arm, taking "shots" to relieve pain therein. For approximately six months thereafter to a large extent she lost control of her right arm, a condition recurring approximately every three months to date and continuing for about an hour at such intervals. She has been treated two or three times a week by doctors. Her back bothers her constantly, even when she is lying down, and particularly when she is working. She has taken phenobarbital and codeine for the relief of her pain, which she has complained of since the day of the accident. She has seen doctors at least twice a week for the four and one-half year period preceding the trial. She has taken medical treatment from an orthopedist prescribing therapy in an effort to relieve her pain and regain the full use of her limbs. She has taken treatments involving traction and has purchased a mechanical device which she uses daily for this purpose. Relief from this source or as the result of heat lamps extends only for approximately a three-hour period. She can no longer

perform her regular housework, and her duties with reference thereto are limited to sweeping and washing dishes. Relatives who either lived with her or nearby have performed most of her housework.

Testimony would support a finding that since the accident she has lost approximately 1,000 hours from her employment at an average hourly wage rate of $1.27 for a total loss in excess of $1,270.

Medical testimony submitted indicated that as a result of the accident she suffered a concussion and a whip-snap injury to her neck which caused the vertebrae therein to be jerked apart; that her present disability is due to a continuing disturbance resulting in a neuralgic pain radiating over the back of her head; that in addition she sustained a strain to the structures of her lower back, particularly in the region of the lumbosacral joint and the right sacro-iliac synchondrosis; that the involvement of her right arm indicated an injury to the brachial plexus; and that her injuries are permanent and will result in a substantial loss of her future earning capacity. When these factors are considered, the conclusion is inescapable that we are lacking in authority to interfere with the jury's award as above described.

■ As to the $3,000 awarded Albin I. Ostrowski, it does not appear excessive. Evidence was submitted as to his liability for the cost of medical treatment required by his wife as a result of the accident extending over a four and one-half year period and for the medicine and drugs required in connection therewith. In view of the permanent nature of his wife's injuries, it is probable that his liability for expenses of this kind will continue for a long period of time in the future. There was also evidence that his wife sustained the loss of 75 percent of her capacity to do the ordinary and regular household work and that this condition was permanent. We do not feel that the jury's award for such losses was so excessive as to require our interference therewith.

The order appealed from is affirmed.

Affirmed.